| United States District Court | Southern District of Texas |
|---|---|

| | |  |
|---|---|---|
| Kimberly Davis, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-09-2733 |
| | § | |
| Compass Group, USA, | § | |
| | § | |
| Defendant. | § | |

## Opinion on Motor Carrier Exemption

1.  *Introduction.*

   Kimberly Davis is a delivery-truck driver for Compass Group. It does business as Canteen Vending Services. She is suing for overtime pay. Canteen says that it is exempt.

2.  *Background.*

   Canteen stocks and otherwise services vending machines. It has a warehouse in Houston and employs drivers to deliver the food and restock machines in Texas. Kimberly Davis is a route driver. She regularly works more than forty hours a week, and Canteen only pays her and the other drivers straight time.

   Canteen buys drinks from local bottlers in Houston. It orders snacks through the Houston office of a whole-sale distributor, Vistar. Vistar in turn orders these products from companies in Texas and elsewhere. For almost eight months in 2009, Canteen ordered fresh and frozen food directly from Honeybake, a company in Kansas. Honeybake delivered its products to Canteen and retrieved its empty containers.

   Vistar now orders fresh sandwiches for Canteen from Pierre Foods in Ohio. Vistar says that they are exclusive to Canteen and cannot be sold to other customers. Vistar also orders for Canteen from Mrs. Freshley's, a bakery in Tennessee. Canteen has a standing order that Vistar fills unless Canteen contacts it.

   Route drivers stock their trucks with products from Canteen's warehouse. Davis says that drivers choose from among all of Canteen's products and no items are set aside for specific

routes. Canteen says that drivers order and pick up particular fresh and frozen products and that many items are intended for specific routes. Both parties agree that drivers select non-perishable items from the entire warehouse stock.

In addition to stocking and driving their trucks, the drivers restock the vending machines on their routes, clean and repair the machines, and promote products and resolve complaints with customers.

3. *Motor Private Carrier.*

The Fair Labor Standards Act exempts motor carriers and motor private carriers from maximum hours and overtime requirements. 29 U.S.C.S. § 207. Motor private carriers are people that transport property in interstate commerce by motor vehicle. 49 U.S.C.S. § 13102. The person must also own or control the property and transport it for a business purpose. *Id.*

The Fair Labor Standards Act considers transportation within a single state to be interstate commerce if it is part of a practical continuity of movement from a product's origin to its destination. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1942). The Motor Carrier Act interprets interstate commerce according to the definition in the Fair Labor Standards Act. 29 CFR 782.7.

To qualify for the motor carrier exemption, the drivers must be part of continuous movement of goods that crosses state lines.

4. *Practical Continuity.*

A continuous movement of goods in interstate commerce is not necessarily interrupted by a stop in a warehouse. The movement continues if: items were ordered for a contract with a specific customer; items were ordered because of an unwritten understanding with a customer; or items were ordered in anticipation of customers' needs. *Walling v. Jacksonville Paper Co.* at 570.

A wine distributor shipped transported wine across state lines by railroad before storing it in their warehouse. Some of the wine was ordered for specific retailers and was quickly delivered, and the remainder sat in the warehouse until purchased. A court found that a driver who delivered it in the intrastate segment was engaged in interstate commerce because the wine distributor did not alter the wine or unusually interrupt the journey. *Collins v Heritage*, 589 F.3d 895, 897 (7th Cir. App 2009).

Although the shipments are divided and distributed to trucks, the stop in Canteen's warehouse is normal for shipments of vending-machine food. The goods remain in interstate commerce until they reach their intended customers – the vending machine patrons. The final intrastate leg is part of the interstate journey.

Whether the goods are for specific customers or general sales, they remain in the flow of interstate commerce if they are ordered based on anticipated needs of those customers. *Walker Oil., Inc. v. Hudson Oil Co.*, 414 F.2d 588 (5th Cir. App. 1969). Canteen has standing orders with Vistar to fill the anticipated needs of some of its customers.

5.  *Shipper's Intent.*

For goods to remain in interstate commerce, the shipper must have a "fixed and persisting" intent that they continue beyond a stopping point. 29 C.F.R. 782.7(b)(2). The original manufacturers intend that their vending-machine products be shipped to Canteen through Vistar. Davis argues that the final destination is Canteen's warehouse.

The final destinations are vending machines in Texas. Although the shippers do not determine the exact machine, their food is sold with the intention that it will be placed in a vending machine. The original shipper intends that Canteen will receive the food and deliver it to a machine, and that the food will not be sold anywhere other than that intended destination. The shipper intends that the goods continue beyond Canteen's warehouse. Canteen is a consignee. It also intends that the goods will continue to move in commerce – first to the vending machine and then to the customer.

6.  *Honeybake.*

For almost eight months, Canteen ordered directly from Honeybake in Kansas City, Kansas. Honeybake delivered its fresh food to Houston and took empty containers back to Kansas. During those months, Canteen was engaged in interstate commerce under the Fair Labor Standards Act. Canteen's warehouse was a short stop on the Honeybake products' interstate journey from Kansas City to a Texas vending machine. When Honeybake shipped its products, it intended that they be delivered to customers who acquire them from individual machines filled by a Canteen route driver.

7.  *Department of Labor Letters.*

The Department of Labor addressed applying the motor carrier exemption to intrastate vending machine servicemen in a 1985 Department of Labor letter. It said that if the products originated in another state, the servicemen are transporting goods in interstate commerce even when their route is entirely intrastate. 1985 DOLWH LEXIS 22. The Department of Labor's position is consistent with the law.

8.  *Conclusion.*

Although this court understands that the scope of Congress's power to regulate interstate commerce has been interpreted beyond constitutional design, it is obliged to follow the error. As a route driver, Davis engages in interstate commerce under the Fair Labor Standards Act. She falls under the motor carrier exemption.

Signed on July 24, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge